UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNY JONES, JR.,

                Plaintiff,                            Hon. Janet T. Neff

v.                                          Case No. 1:20-cv-50

COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.

_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security that Plaintiff, previously found to be entitled to Supplemental Security Income (SSI) benefits, is no longer disabled.   Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that the Commissioner's decision be affirmed.

## STANDARD OF REVIEW

The Court's jurisdiction is limited to a review of the Commissioner's decision and of the record made in the administrative hearing process.   *Tucker v. Commissioner of Social Security*, 775 Fed. Appx. 220, 225 (6th Cir., June 10, 2019). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her

decision and whether there exists in the record substantial evidence supporting that decision.  *Id.* at 224-25.   Substantial evidence is more than a scintilla, but less than a preponderance, and constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Livingston v. Commissioner of Social Security*, 776 Fed. Appx. 897, 898 (6th Cir., June 19, 2019).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017).   The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *Moruzzi v. Commissioner of Social Security*, 759 Fed. Appx. 396, 402 (6th Cir., Dec. 21, 2018).   This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.   *Luukkonen v. Commissioner of Social Security*, 653 Fed. Appx. 393, 398 (6th Cir., June 22, 2016).

## BACKGROUND

On June 27, 2011, Plaintiff, then 39 years of age, was found to be disabled on the ground that his heart impairment satisfied Sections 4.02 (Chronic Heart Failure) and 4.04 (Ischemic Heart Disease) of the Listing of Impairments.   (ECF No. 6-2, 6-4, PageID.47-49, 176).   The Commissioner subsequently determined, however, that, as of September 14, 2016, Plaintiff's impairments improved such that he no longer

qualified for disability benefits.   (*Id.*, PageID.47, 175-77).   Following an administrative hearing, ALJ Donna Grit, in an opinion dated December 24, 2018, concluded that Plaintiff's disability terminated as of September 4, 2016.   (ECF No. 6-2, PageID.47-65, 71-100).   The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.   (*Id.*, PageID.24-29).   Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The Social Security Act provides that disability benefits may be terminated if "the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling."   42 U.S.C. § 423(f).   Termination of benefits must be supported, however, by substantial evidence that (1) there has been medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful activity. *See* 42 U.S.C. § 423(f)(1)(A)-(B).

The social security regulations articulate a seven-step sequential process by which determinations of continuing disability are made.   *See* 20 C.F.R. § 416.994. If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.   The steps of this sequential process are as follows:

(1)    Does the individual have an impairment or combination of impairments which meets or equals in severity an impairment identified in the Listing of Impairments;

(2)    Has the individual experienced a medical improvement;

(3)    Is the improvement related to the individual's ability to perform work (i.e., has there been an increase in the individual's residual functional capacity based on the impairment(s) present at the time of the most recent favorable medical determination);

(4)    If the individual has either not experienced a medical improvement or any such improvement is unrelated to his ability to perform work, do any of the exceptions to the medical improvement standard apply;

(5)    Does the individual suffer from a severe impairment or combination of impairments;

(6)    Can the individual perform his past relevant work;

(7)    Can the individual perform other work;

20 C.F.R. § 416.994(b)(5).

When the Commissioner evaluates whether a claimant continues to qualify for benefits, the claimant is not entitled to a presumption of continuing disability. *See Kennedy v. Astrue*, 247 Fed. Appx. 761, 764 (6th Cir., Sept. 7, 2007).   Rather, the decision whether to terminate benefits must "be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). Nevertheless, the burden of proof to establish that a claimant has experienced a medical improvement that renders him capable of performing substantial gainful activity lies with the Commissioner.   *See, e.g., Kennedy*, 247 Fed. Appx. at 764-65.

-4-

The ALJ found that, as of September 4, 2016, Plaintiff suffered from: (1) congestive heart failure; (2) hypertension; (3) sleep apnea; (4) obesity; and (5) depression, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (ECF No. 6-2, PageID.49-53). The ALJ further found that, because Plaintiff's impairments no longer satisfied any Listing, Plaintiff experienced medical improvement related to his ability to work. (*Id.*, PageID.53).

With respect to Plaintiff's residual functioning capacity (RFC), the ALJ found that, as of September 4, 2016, Plaintiff retained the ability to perform sedentary work subject to the following restrictions: (1) he cannot climb ladders, ropes, or scaffolds; (2) he can only occasionally stoop, crouch, crawl, kneel or climb ramps/stairs; (3) he experiences no limitations with respect to balancing; (4) he can only occasionally be exposed to heat/cold extremes, humidity, fumes, dusts, gases, odors, or poor ventilation; and (5) he can never work at unprotected heights or with dangerous moving machinery. (ECF No. 6-2, PageID.54).

The ALJ determined that, as of September 4, 2016, Plaintiff was still unable to perform any of his past relevant work. Accordingly, the ALJ questioned a vocational expert to determine whether there existed other work which Plaintiff could perform consistent with his RFC. The vocational expert testified that there existed approximately 162,000 in the national economy which an individual could perform consistent with Plaintiff's RFC. (ECF No. 6-2, PageID.97-98). This

-5-

represents a significant number of jobs.   *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was no longer entitled to benefits.

## I.    Plaintiff's RFC

A claimant's RFC represents the "most [a claimant] can still do despite [his] limitations."   *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule").   As noted above, the ALJ concluded that, as of September 4, 2016, Plaintiff retained the ability to perform a limited range of sedentary work.   Plaintiff argues that he is entitled to relief because the ALJ's RFC assessment is not supported by substantial evidence.

Treatment notes dated January 5, 2011, indicate that Plaintiff was experiencing "chest discomfort."   (ECF No. 6-7, PageID.425).   Chest x-rays revealed "cardiomegaly with borderline pulmonary vascular congestion."   (*Id.*, PageID.430).   A January 8, 2011 echo/doppler examination revealed a "severe" impairment in systolic function and several other "mild" to "moderate" findings. (*Id.*, PageID.438).   Following a June 14, 2011 examination, Plaintiff was diagnosed with "severe cardiomyopathy with systolic dysfunction."   (*Id.*, PageID.445).

-6-

Accordingly, Plaintiff's impairments were found to meet or equal Listings 4.02 and 4.04.  Subsequent evidence, however, supports the ALJ's conclusion that Plaintiff experienced medical improvement.

On November 2, 2011, Plaintiff had an implantable cardiac defibrillator (ICD) device installed.  (ECF No. 6-7, PageID.474, 500).  A March 31, 2015, CT scan of Plaintiff's chest revealed a "moderately enlarged" heart with "mildly prominent" pulmonary arteries.  (*Id.*, PageID.468).  There was, however, no evidence of pericardial effusion or aortic calcification or aneurysm.  (*Id.*).  Treatment notes dated November 18, 2015, characterized Plaintiff's high blood pressure as "mild."  (*Id.*, PageID.451).  The results of a cardiovascular examination were unremarkable.  (*Id.*, PageID.453).

Treatment notes dated January 4, 2016, indicate that Plaintiff was "doing quite well" with no reports of palpitations or angina pectoris.  (*Id.*, PageID.487-88).  The results of a cardiovascular examination were unremarkable.  (*Id.*).  An examination of Plaintiff's lower extremities revealed no evidence of edema.  (*Id.*).  The cardiologist also noted that Plaintiff "has not had a recurrent shock from his ICD device."  (*Id.*).

The results of a July 28, 2016, physical examination were unremarkable with "no evidence of decompensated heart failure."  (*Id.*, PageID.475-77).  Treatment notes dated October 17, 2016, indicate that Plaintiff was not experiencing chest

pain, lightheadedness, leg edema, syncope, orthopnea,[1] PND,[2] or claudication.[3] (*Id.*, PageID.502).    Treatment notes dated March 28, 2018, reiterate these findings. (ECF No. 6-8, PageID.569).    The results of a physical examination were likewise unremarkable.    (*Id.*).    The results of a July 7, 2018, CT scan of Plaintiff's cervical spine were unremarkable.    (*Id.*, PageID.560).    Likewise, x-rays of Plaintiff's lumbar spine, taken July 17, 2018, were unremarkable.    (*Id.*, PageID.554).

The relevant regulations define "medical improvement" as "any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled."[4]    20 C.F.R. § 416.994(b)(1)(i).    A finding that a claimant has experienced "a decrease in medical severity" must be "based on changes (improvement) in the symptoms, signs, or laboratory findings associated with your impairment(s)."    *Id.*

---

[1] Orthopnea refers to a circumstance in which a person finds it more difficult to breathe when lying down due to fluid in the lungs. *See* What is Orthopnea?, available at https://www.webmd.com/lung/lung-what-is-orthopnea (last visited Sept. 10, 2020).

[2] PND is shorthand for paroxysmal nocturnal dyspnea, a condition where an individual "wake[s] up in the middle of the night with severe shortness of breath." *See* Heart Failure Symptoms, available at https://www.uofmhealth.org/health-library/tx4082abc (last visited Sept. 10, 2020).

[3] Claudication refers to pain in the lower extremities when walking caused by a reduction in blood flow due to narrowed or blocked arteries.    *See* Claudication, available at https://www.hopkinsmedicine.org/health/conditions-and-diseases/claudication (last visited Sept. 10, 2020).    The presence of claudication may be a symptom of peripheral artery disease.    *Id.*

[4] In this case, the most recent favorable medical decision is the June 27, 2011, determination that Plaintiff was entitled to benefits.    (ECF No. 6-2, PageID.49).

Medical improvement is related to a claimant's ability to work only if such results in an increase in the claimant's residual functional capacity.    20 C.F.R. § 416.994(b)(1)(iii).

The ALJ's conclusion that Plaintiff experienced a medical improvement in his condition, relative to his condition as of June 2011, is supported by substantial evidence.    Moreover, the ALJ's conclusion that Plaintiff can perform a limited range of sedentary work is likewise supported by substantial evidence. Accordingly, these arguments are rejected.    In a related argument, Plaintiff challenges the date on which the ALJ found that his disability ended.    The ALJ found that Plaintiff's disability ceased as of September 4, 2016.    Plaintiff argues that this date is a "mystery," which the ALJ selected "out of thin air."

When finding that a claimant's disability has ended, the ALJ need not select a date "supported by 'smoking gun medical documents' generated on the date in question." *Valencia v. Commissioner of Social Security*, 216 F.Supp.3d 835, 839 (W.D. Mich. 2016) (citation omitted).    Rather, the ALJ must simply select a date that is "not so wholly arbitrary so as to carry the ALJ's decision outside the 'zone of choice' that the ALJ possesses in rendering disability decisions." *Ibid.* (citation omitted).    The ALJ's decision in this regard satisfies this standard.    While the evidence would have supported a finding that Plaintiff's disability ended prior to September 4, 2016, or perhaps even that it did not end until after this date, the ALJ's finding in this regard is not arbitrary.    Instead, the ALJ's finding reflects

-9-

that Plaintiff's condition continued to improve throughout 2016, a conclusion confirmed by subsequent evidence.   Accordingly, this argument is rejected.

## II.    Plaintiff's Credibility

The ALJ found that Plaintiff's subjective allegations of extreme pain and limitation were less than fully credible.   (ECF No. 6-2, PageID.57-60).   In so doing, the ALJ discussed at great length the relevant evidence and how such undermined Plaintiff's various statements of pain and limitation.   (*Id.*).   Plaintiff argues that he is entitled to relief because the ALJ "used improper criteria in evaluating [his] credibility."

Plaintiff has failed to develop this argument and articulate how or why he is entitled to relief.   Rather than engage with the current record and articulate an argument that he is entitled to relief, Plaintiff merely cites to previous instances in which the ALJ's credibility determinations were found deficient.   Plaintiff's *ad hominem* attacks on the ALJ do not substitute for legal analysis.   Simply put, Plaintiff has failed to satisfy his affirmative obligation to clearly articulate the basis for his claims of error.   *See, e.g., Zizzo v. Commissioner of Social Security*, 2013 WL 5291663 at *8 (E.D. Mich., Sept. 19, 2013) (courts do not engage in a self-directed inquiry into the facts because "judges are not like pigs, hunting for truffles buried in" the record).

Accordingly, the Court finds that Plaintiff has waived this claim.   *See, e.g., United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2014) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are

deemed waived.   It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to. . .put flesh on its bones"); *Moore v. Commissioner of Social Security*, 573 Fed. Appx. 540, 543 (6th Cir., Aug. 5, 2014) (citing *Stewart* with approval to find an undeveloped argument waived). Furthermore, the Court finds that the ALJ's decision to discount Plaintiff's subjective allegations is supported by substantial evidence as detailed in the ALJ opinion.   (ECF No. 6-2, PageID.57-60).

### III.    Treating Physician Doctrine

Finally, Plaintiff argues that he is entitled to relief because the ALJ "did not properly consider the findings of the treating physicians."   The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.   *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).   An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record."   *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013).

Plaintiff invokes the treating physician doctrine, but fails to identify any medical *opinion* which the ALJ failed to properly assess.   Instead, Plaintiff argues that the ALJ failed to properly consider certain "findings" by his care providers.

This argument is little more than a request that this Court reweigh the evidence and articulate a different RFC.   The Court declines this invitation as such is beyond its jurisdiction.   *See, e.g., Biestek v. Commissioner of Social Security*, 880 F.3d 778, 783 (6th Cir. 2017) (the Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility).   Accordingly, this argument is rejected.

## **CONCLUSION**

For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within such time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: September 16, 2020                    /s/ Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge